SYLVAN M. PAYNE, APPELLEE, v. GEORGE H. RISSER ET AL., APPELLANTS.

FILED JUNE 16, 1913.   No. 17,229.

**Appeal: REVERSAL.** A verdict which is unsupported by any com petent evidence is insufficient to sustain a judgment based thereon.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Reversed and dismissed.*

. *D. J. Flaherty* and *George H. Risser,* for appellants.

*J. A. Brown, contra.*

FAWCETT, J.

This action originated in justice court. From a judgment of the district court for Lancaster county, in favor of plaintiff, defendants appeal.

The petition in the district court alleged that defendant Risser, police judge of the city of Lincoln, defendant Rhode, health officer of the city, and defendant Paine, president of the Lancaster County Humane Society, in the month of May, 1909, "entered into an unlawful conspiracy against the plaintiff, and wickedly, wilfully, maliciously and unlawfully conspired together with the intent and for the purpose of destroying the property of the plaintiff;" that on the 20th of that month plaintiff was leading a horse on Tenth street when defendants Risser and Rhode, and other persons to plaintiff unknown, came out of the police station "with guns and revolvers, and surrounded the plaintiff and his said horse," and that defendant Paine, pretending to act under and by virtue of his position as president of the humane society, and defendant Rhode, pretending to act under and by virtue of the order and direction of defendant Paine, "and acting in pursuance of said unlawful conspiracy, so entered into as aforesaid," took the horse from the possession of plaintiff, and then and there shot and killed him. The answer consists of an objection to the jurisdiction of the district court for the reason that no judgment was entered in justice court, and a general denial.

The objection to jurisdiction was properly overruled. While the judgment entered by the justice was not in precisely the usual form and was not accurately worded, we think it was sufficient.

The fourth assignment of error is that the verdict is not sustained by the evidence. This assignment goes to the real merits of the case, and is the only one necessary to be considered. The evidence shows that the horse had been tied to a piece of 2 by 4; that she became frightened and pulled back, pulled the piece of 2 by 4 off, and started to run with it dangling to the tie strap; that it swung around and penetrated one of her thighs above the stifle, on the inside, making a hole about nine inches in depth. Plaintiff then took her to a barn, where she was treated by Doctor Reeves, a veterinarian. She remained under his treatment for about three weeks. The doctor testified that, when plaintiff came for the mare, "I told Payne it would be hard for her to travel, and that he had better take her home in a wagon, but Payne thought he had better take her out a short distance and leave her. I told Payne that if he would get her in a pasture where she could get green grass it would be better for her than dry feed. I thought the mare had improved, and that her chances of recovery were good. I did not think the wound had affected the mare for breeding purposes. I thought if the mare recovered entirely she would be worth $120 or $125 or something like that." On cross-examination he testified: "If the mare recovered she would be worth as much as she ever was; if she did not recover she would not be worth anything—she would die." Plaintiff testified that the barn where the mare was being treated was less than a block from the police station; that on the day she was killed he was leading her home; that while opposite the police station Judge Risser came out and stopped him and sent for defendant Paine; that when Paine arrived he said the mare should be killed, and defendant Rhode killed her. When interrogated as to her value, he testified: "I base my valuation on the market value and what she was worth to me, and I would put her at $125. The mare was eight years old past. She was worth $125 to me. I do not think she would sell for $125 in her condition; but then we would have to wait and see how she would come out. She was worth that to

me.  I don't know what she would sell for."  He also tes-
tified that there were no bones broken.  Plaintiff called his
brother-in-law, E. C. Graves, as a witness.  He testified:
"I never saw the mare after she was hurt.  The nature and
extent of the injury would affect the market value.  She
would be worth $125, assuming that she would get well."
J. E. Graves, brother of the preceding witness, testified
that the mare was worth $125 before she was injured; that,
"if she would recover from the injury so that she could do
the same work she did before, she would be worth $125."
This was the only evidence offered by plaintiff as to the
value of the mare at the time she was killed.  Upon that
question, it was no testimony at all.  Plaintiff and all of
his witnesses coupled with their valuation of $125 the con-
dition that she would be worth that sum "if she recovered,"
or, as the doctor put it, if she "recovered entirely."  As
against this testimony, defendants introduced eight wit-
nesses who testified that the mare in her then condition had
no value at all.  As against the doctor's testimony that he
thought the mare's chances of recovery were good, seven
witnesses testified that in their judgment she could never
have recovered; and two or three other witnesses testified
to facts in relation to her condition which strongly cor-
roborate this testimony.  There is a total failure of evi-
dence to show that the mare was of any value at the time
she was killed.  She was so badly crippled that on the day
she was shot, which was about three weeks after she was
injured, she walked on three legs, was weak and reduced
in flesh, and had other sores on her hip and body, the re-
sult doubtless of her struggles in the barn.  This is not a
case where a verdict should be sustained on the ground
that it was rendered upon conflicting evidence.  The ver-
dict is so clearly without any competent evidence to sustain
it that it should not be permitted to stand.

The allegation in the petition that defendants entered
into a conspiracy to destroy plaintiff's property is not
worthy of serious consideration.  On the contrary, the evi-
dence shows that they acted in the utmost good faith, in

the performance of what they believed to be their official duty, and they should not be further harassed.

Plaintiff's case is so clearly without merit that the judgment of the district court is reversed and the action dismissed.

REVERSED AND DISMISSED.

LETTON, ROSE and HAMER, JJ., not sitting.